IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LOURDES J. RODRIGUEZ, ) | Case No. 1:19-cv-2941 |
| ) | |
| Plaintiff, ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF ) | THOMAS M. PARKER |
| SOCIAL SECURITY, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |

**I.      Introduction**

Plaintiff, Lourdes J. Rodriguez, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).  Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Rodriguez's SSI application be affirmed.

**II.     Procedural History**

Rodriguez protectively applied for SSI on February 14, 2017.  (Tr. 174).[1]  She alleged that she became disabled on October 22, 2016.  (Tr. 174).  The Social Security Administration denied Rodriguez's application initially (Tr. 119) and on reconsideration.  (Tr. 124).  Rodriguez

---

[1] The administrative transcript is in ECF Doc. 10.

requested an administrative hearing. (Tr. 129). ALJ Joseph Hajjar heard Rodriguez's case and denied the claim in a November 20, 2018 decision. (Tr. 15-32). On October 21, 2019, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). On December 20, 2019, Rodriguez filed a complaint challenging the Commissioner's decision. ECF Doc. 1.

**III.    Evidence**

    **A.    Relevant Medical Evidence**

Rodriguez received special education services for a developmental handicap as a child. (Tr. 248-250). On the Wechsler Intelligence Scale for Children Revised (WISC-R), Ms. Rodriguez's verbal IQ score was 57; her performance IQ score was 63; and her full scale IQ was 55. (Tr. 249). Her scores on the Wide Range Achievement Test-Revised were in the 5th grade level for reading, spelling and arithmetic. (Tr. 249). The Vineland Adaptive Behavior Scales showed deficits in all areas of adaptive behavior, with low levels in communication and socialization to moderately low in daily living skills. Her visual-motor skills were also weak and below her chronological age. (Tr. 250).

In April 2017, Rodriguez's primary care provider, Lavinia Cozmin, M.D., observed that Rodriguez appeared anxious. (Tr. 1522).

In June 2017, Rodriguez began seeking mental health treatment at the Nord Center. (Tr. 1431). She reported having poor concentration, excessive worrying, difficulty controlling the worry, and irritability. She reported that others told her that she had mood swings. The counselor observed that Rodriguez's attention and concentration were mildly impaired. She estimated borderline intelligence. (Tr. 1441). Rodriguez was diagnosed with generalized anxiety disorder and referred to counseling. (Tr. 1440).

Sarah Barbee, MA, LPC, provided individual counseling at the Nord Center from August 2017 through, at least, June 2018. (Tr. 1461-1496). The objective of counseling was to reduce Rodriguez's symptoms of anxiety. (Tr. 1465). Rodriguez reported symptoms of excessive worrying, difficulty controlling the worry, racing thoughts, irritability, restlessness, feeling on edge, difficulty concentrating, sleep disturbance, varied appetite and muscle tension. At several appointments, Ms. Barbee observed depressed and anxious mood; that Rodriguez had a tangential thought process; and that she presented as highly anxious and agitated. (Tr. 1485, 1487, 1489, 1491, 1493, 1495).

Dr. Cozmin noted normal psychological symptoms at Rodriguez's appointment in July 2017, but she appeared anxious at her appointment in October 2017. (Tr. 1532, 1545). In April 2018, Dr. Cozmin noted that Rodriguez appeared distressed and anxious and that her speech was rapid and/or pressured. (Tr. 1559). Dr. Cozmin diagnosed anxiety disorder due to general medical condition and prescribed Buspar. (Tr. 1561).

  **B.**  **Relevant Opinion Evidence**

    **1.**  **Treating Physician – Dr. Cozmin**

On April 4, 2018, Dr. Lavinia Cozmin completed a medical source statement for Rodriguez's physical abilities and limitations. (Tr. 1443-1444). Dr. Cozmin opined that Rodriquez could work zero hours on a typical day; that she would have attendance problems due to easy fatiguability, anxiety, leg pains and back pain; that she could stand or walk five minutes at a time for a total of one hour per day; and could sit for fifteen minutes at a time for a total of two hours per day. She opined that Rodriguez would have trouble sitting due to anxiety and low back pain. (Tr. 1443). Dr. Cozmin opined that Rodriguez could lift and carry five to six pounds occasionally and one pound frequently. She opined that Rodriquez would have difficulty fingering and handling due to being anxious and fidgety and not be able to concentrate or do

3

things fast. Dr. Cozmin noted that Rodriguez had episodes of depression when she recalled an October 2016 auto accident. (Tr. 1444).

### 2. Examining Psychological Consultant – Thomas E. Zeck, Ph.D.

On December 23, 2014, Dr. Thomas Zeck performed a psychological evaluation including intelligence and achievement testing at the request of the agency. (Tr. 283-289). Dr. Zeck observed that Rodriguez lacked confidence and appeared tired, exhausted and depressed. She had a flat affect and sad mood. She lacked energy and seemed listless. She had a very rapid speech pattern, and Dr. Zeck asked her to slow down and speak more clearly. She seemed tense and anxious and moved her right leg back and forth during the examination. However, she was oriented in all spheres and her full scale IQ placed her in the mild range of intellectual disability. (Tr. 287).

Rodriguez was able to count backwards from 20 to 1, but missed three numbers. She could do serial 3's but could not do serial 7's. She could recall two out of three items after five minutes. She could not interpret any proverbs. Her concentration, rote memory and immediate recall; her mental arithmetic reasoning abilities, and her abstract and logical thinking abilities were all "within the mental defective range." She had a difficult time interpreting hypothetical situations. (Tr. 286).

On the Wechsler Adult Intelligence Scale-IV (WAIS-IV), her verbal comprehension score was 68 (the 2nd percentile); her perceptual reasoning was 75 (5th percentile); her working memory score was 60 (0.4 percentile); her processing speed was 71 (3rd percentile); and her full scale score was 63 (1st percentile). (Tr. 287). On the Wide Range Achievement Test – Fourth Edition (WRAT-4), her scores ranged from the 1st to 9th percentile placing her at the 2.9 to 6.4 grade equivalents. Three of her achievement subtests were over two standard deviations below the mean. (Tr.287-288).

Dr. Zeck diagnosed mild intellectual disability, specific learning disorder with impairment in reading comprehension, specific learning disability with impairment in math calculation, and unspecified depressive disorder. (Tr. 288). He opined that Rodriguez had significant limitations in understanding, remembering and carrying out instructions; she may have difficulty with attention and concentration in her persistence; she tended to shy away from close interpersonal relationships; and would have difficulty dealing with work pressure in a work setting. (Tr. 289).

### 3. Examining Medical Consultant – Salvatore Frangiamore, M.D.

On January 3, 2015, Dr. Salvatore Frangiamore examined Rodriguez at the request of the agency. (Tr. 291). Dr. Frangiamore stated a "probable diagnosis" of breathing issues, which appeared to be more anxiety related, and a resting tremor, which had not been evaluated. He opined that her physical impairments would have a minimal impact on her ability to function in the workplace. (Tr. 295).

### 4. Examining Psychological Consultant – Ronald Smith, Ph.D.

On June 26, 2017, Dr. Ronald Smith evaluated Rodriguez at the request of the administration. Dr. Smith noted that Rodriguez's appearance was clean and neat. She was cooperative and related well. She had clear speech and her thinking seemed well organized. (Tr. 278-279). Rodriguez was not able to multiply four and five. She did not give the correct change two out of three times. She could count backwards from 20 in 44 seconds, but she made six mistakes. She recited the alphabet in 34 seconds with one mistake. She caught on slowly to the task of counting from 1 to 40 by threes and counted on her fingers to complete the task. (Tr. 279).

Dr. Smith diagnosed adjustment disorder with anxiety and depressed mood He opined that Rodriguez would be able to understand and remember job instructions, although she may be

5

able to understand spoken instructions better than written. He further opined that, if she understood and remembered instructions, then she may still have difficulty carrying them out successfully because of her feelings of suspicion, depression and anxiety associated with the social consequences of her auto accident in October 2016. (Tr. 280-281). He opined that she would have "trouble adequately maintaining attention and concentration and maintaining persistence in the performance of simple or more complex tasks due to her continued feelings of anxiety, hyper-alertness, and preoccupation with the thoughts and intentions of others." He opined that she would be able respond appropriately to a supervisor but may have difficulty dealing with coworkers in a job setting." Finally, he opined that she may have difficulty dealing appropriately with work pressures due to her tendency to view the actions of others as being directed specifically toward her. (Tr, 281).

### 5. State Agency Consultants

At the initial claim level there was insufficient evidence for the state agency consultant, William Bolz, M.D., to evaluate Rodriguez's conditions. (Tr. 94). On July 5, 2017, state agency reviewing consultant, Bruce Goldsmith, Ph.D., reviewed Rodriguez's mental health records and opined that Rodriguez could perform simple, repetitive, routine tasks that did not require prolonged, intense focus or quick pace. He opined that her social interactions should be infrequent and superficial and that she could maintain a low stress environment without strict production quotas or demands on time. (Tr. 113-114).

### C. Relevant Testimonial Evidence

Rodriguez testified at the ALJ hearing. (Tr. 48-75). She was 44 years old at the time of the hearing but was 42 years old when her disability allegedly began. (Tr. 48). She had been living by herself for the preceding two months, but her adult daughter lived next door. (Tr. 48-

6

49). She had no income. She had a driver's license and access to a car. (Tr. 49). She was 5'2" and weighed 135 pounds. (Tr. 50).

Rodriguez was involved in a serious motor vehicle accident in late 2016. She was life-flighted to the hospital where she was admitted for 33 days. (Tr. 61-62). She then spent five months in rehabilitation at a nursing home. (Tr. 64). Her left leg was seriously injured in the accident. Her leg still would swell and get tired at times. (Tr. 62). She was still using a cane. (Tr. 65).

Rodriquez had completed high school in learning disability classes. (Tr. 50, 58-59). The last time she had worked was in 2016, before the motor vehicle accident. (Tr. 50). She had previously worked at a full-time home healthcare job for about a year. (Tr. 51). In 2004, Rodriguez had worked full-time doing assembly work for about a month. (Tr. 53). In 2001, she had performed assembly work for a year and a half. (Tr. 73-74). Rodriguez had also worked at Big Lots; she quit that job because she could not keep up with the pace. (Tr. 57).

Rodriguez testified that she typically watched TV all day. Her mother came to her house during the day and did laundry and cooked meals. (Tr. 54). Rodriguez was able to go grocery shopping once a month by using the motorized scooter at the store. (Tr. 54-55).

Rodriguez took medication for anxiety and Tylenol for pain. (Tr. 55). She had completed a course of physical therapy earlier in the year. (Tr. 56). She met with a counselor twice a month. (Tr. 68).

Vocational Expert ("VE") Jacquelyn Schabacker also testified at the hearing. (Tr. 75-84). The VE considered Rodriguez's past work to be a home health aide and a small parts assembler. (Tr. 76). The VE testified that an individual who could perform light work, except she could only occasionally climb ramps and stairs; could never climb ladders, ropes or scaffolds; could frequently balance; could never work near unprotected heights or moving

7

mechanical parts; was limited to frequently pushing and pulling with the lower extremities; could perform simple, routine, and repetitive tasks, but not at a production rate pace; and could tolerate occasional interactions with supervisors, coworkers and the public, would not be able to perform Rodriguez's past work as a home health aide or a small parts assembler. (Tr. 76-78). However, she would be able to perform the jobs of garment sorter, mail sorter and housekeeper. (Tr. 78). If the same individual used a cane for ambulation, all work would be precluded at the light exertion level. (Tr. 78-79). However, at the sedentary level, the individual could perform the jobs of document addresser, final assembler and touch-up screener. (Tr. 79). The individual could not perform any these jobs, however, is she required spoken instructions only. (Tr. 80). The VE testified that there were other jobs that the individual could perform at the sedentary level if verbal instructions were required. (Tr. 82). The VE opined that most employers would tolerate an employee missing one day of work per month. (Tr. 83).

### IV. The ALJ Decision

The ALJ made the following paraphrased findings relevant to this appeal:

4. Rodriguez had the residual functional capacity to perform light work, except that she could occasionally climb ramps and stairs, could never climb ladders, ropes or scaffolds, could frequently balance, could never work near unprotected heights or near moving mechanical parts; she could frequently push and pull with the bilateral lower extremities; she could perform simple routine and repetitive task, but not at a strict production rate pace; she could tolerate occasional interaction with supervisors, co-workers and the public. (Tr. 21).

9. Considering her age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Rodriguez could perform. (Tr. 31).

Based on all of his findings, the ALJ determined that Rodriguez was not under a disability since February 14, 2017, the date her application was filed. (Tr. 32).

8

## V. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers*, 486 F.3d at 241; *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error

9

prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 416.912(a).

10

### B. Medical Opinion Evidence

Rodriguez argues that the ALJ erred in his evaluation of the psychological opinions in her record and that, as a consequence, his RFC determination was not supported by substantial evidence.[2] At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives. 20 C.F.R. § 416.927(c).[3] None of the psychological opinions in the record were from treating sources. "[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Instead, an ALJ must weigh such opinions based on: (1) the examining relationship; (2) the degree to which supporting explanations consider pertinent evidence; (3) the opinion's consistency with the record as a whole; (4) the physician's specialization related to the medical issues discussed; and (5) any other factors that tend to support or contradict the medical opinion. *Id.*; 20 C.F.R. § 416.927(c). Generally, an examining physician's opinion is due more weight than a nonexamining physician's opinion. 20 C.F.R. § 416.927(c)(2); *Gayheart*, 710 F.3d at 375. An ALJ does not need to articulate good reasons for the weight assigned to a nontreating source opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (declining to address whether an ALJ erred in failing to give good reasons for not accepting non-treating physicians' opinions).

#### 1. Dr. Zeck

Rodriguez argues that the ALJ did not properly evaluate Dr. Zeck's opinion, which she argues was consistent with other evidence in the record. Dr. Zeck evaluated Rodriguez once, in 2014, at the request of the state agency. After summarizing some of Dr. Zeck's findings (Tr. 25, 27-28), the ALJ assigned little weight to Dr. Zeck's opinions, stating:

---

[2] Rodriguez focuses her appeal on the ALJ's evaluation of the psychological opinions in the record because she recognizes that, even if the ALJ would have limited her exertion ability to sedentary, it would not have been enough to establish disability for a younger person. See ECF Doc. 11 at 12.
[3] 20 C.F.R. §§ 416.927 applies to Rodriguez's claim because she filed it before March 27, 2017.

11

> This opinion is given little weight, as it is inconsistent with the record as a whole. The opinion was rendered outside of the relevant time period in this case, as the claimant's filing date was in 2017. Therefore, the opinion is dated. Furthermore, this was a one-time examination and more recent counseling records do not suggest this level of limitation. For example, on psychiatric exam in April 2018, the claimant was not slowed and was not withdrawn. Cognition and memory were normal. She did not express inappropriate judgment. She did not exhibit a depressed mood. Recent and remote memory were normal. She had good insight and motivation. She was attentive (Exhibit 19F/63). Accordingly, this opinion is given little weight. (Tr. 28).

As stated above, the ALJ was not required to provide good reasons for the weight assigned to Dr. Zeck, a nontreating source. Even so, the ALJ explained that he assigned little weight to Dr. Zeck's opinion because it had been formed in 2014, nearly two years before Rodriguez filed her application and over three years before her disability allegedly began. He also found that it was inconsistent with some of the more recent records from Rodriguez's treating physician, Dr. Cozmin.[4] (Tr. 1559). If Dr. Zeck had been a treating physician, the ALJ's evaluation of his opinion could be argued to be insufficient. But because he was not a treating physician, the ALJ was not required to evaluate Dr. Zeck's opinion for controlling weight. Nor was he required to further explain his reasoning for the weight assigned to Dr. Zeck's opinion. The ALJ properly assigned little weight to Dr. Zeck's opinion and explained his reasons for doing so. Rodriguez has not identified any error in the ALJ's evaluation of the opinion evidence from Dr. Zeck.

Moreover, Rodriguez has not explained how assigning more weight to Dr. Zeck's opinion would have affected the ALJ's RFC determination. Rodriguez argues that Dr. Zeck was the only physician who performed IQ testing, but she does not identify any conflict between the ALJ's RFC determination and the IQ test results. Dr. Zeck opined that Rodriguez's IQ testing placed

---

[4] Rodriguez argues that the ALJ assigned little weight to Dr. Zeck's opinion based solely on a recent note from her treating physician. ECF Doc. 11 at 18. This argument over-simplifies the ALJ decision; his assignment of little weight to Dr. Zeck's opinion was based on several factors – including the fact that the opinion was formed before the disability allegedly began.

12

her in the mild range of an intellectual disability, but he did not state that this precluded her from engaging in any work. (Tr. 287-289). In fact, the record shows that Rodriguez *did* work after Dr. Zeck's examination, until 2016 when she was involved in a motor vehicle accident. (Tr. 183). The ALJ recognized that Dr. Zeck's testing had shown a full scale IQ of 63 and placed her in the mild range of an intellectual disability. (Tr. 25). However, in forming the RFC, the ALJ was required to consider *all* of the evidence, including the fact that Rodriguez had continued working, despite the mild intellectual disability assessed by Dr. Zeck. 20 CFR § 416.920(e). Dr. Zeck's opinion was one part of the record that the ALJ considered when he decided Rodriguez's RFC. He properly explained the weight he assigned to Dr. Zeck's opinion, and Rodriguez has not identified any error in the ALJ's evaluation of Dr. Zeck's opinion.

### 2. Dr. Smith

Rodriguez also argues that the ALJ erred in his evaluation of Dr. Ronald Smith's opinion. After summarizing some of Dr. Smith's opinions, the ALJ stated:

> This opinion is given partial weight as it is somewhat consistent with the record as a whole. This opinion is consistent with the claimant's ability to understand, remember, and carry out simple instructions. For example, on mental status examination, the claimant's speech was clear and thinking seemed well organized (Exhibit 1F/5). This opinion is consistent with the claimant's social limitations. For example, on psychiatric exam, the claimant's mood was anxious (Exhibit 19F/63). However, the record supports a slightly lesser degree of restriction. The claimant was well groomed at a counseling appointment. (Exhibit 14F/19-21). On psychiatric exam, the claimant was attentive (Exhibit 19F/63). Accordingly, the opinion is given little weight. (Tr. 29).

Rodriguez argues that the ALJ improperly discounted Dr. Smith's opinion because he only met with Rodriguez once. But the ALJ was permitted to consider this fact. Indeed, the treating relationship is one of the factors the ALJ is required to consider (20 C.F.R. § 416.927(c)); the frequency of a physician's treatment directly relates to this consideration. The fact that Dr. Smith met with Rodriguez once, at the request of the state agency, meant that he was a

13

nontreating source. And, as already explained, the ALJ was neither required to assess his opinion for controlling weight nor required to provide good reasons for the weight assigned to his opinion. *See Smith,* 482 F.3d at 876.

And Rodriguez's argument regarding Dr. Smith suffers from the same deficiency as her argument related to Dr. Zeck, because she does not explain how the ALJ's assignment of little weight to Dr. Smith's opinion affected his RFC determination. Rodriguez argues only that the ALJ improperly evaluated the opinion. But, even if Rodriguez could show that the ALJ erred in his assessment of Dr. Smith's opinion, she would still need to show that this had some impact on the ALJ's RFC determination and his ultimate finding of non-disability. The court should not remand when it would be an idle and useless formality. *See Rabbers v. Comm'r Soc. Sec.,* 582 F.3d 647, 669) (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004)) (holding "that [when] 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'").

Rodriguez argues that the ALJ's decision undermines Dr. Smith's conclusions that she would have difficulty with the concentration for even simple work. It is true that Dr. Smith opined that Rodriguez would have trouble adequately maintaining attention and concentration. (Tr. 281). But, the ALJ included limitations in the RFC determination reflecting Rodriguez's limitations. Specifically, he limited her to performing simple routine and repetitive task, but not at a strict production rate pace. (Tr. 21). Rodriguez has not explained why the ALJ should have included greater limitations in the RFC based on Dr. Smith's opinion.

The ALJ gave Dr. Smith's opinion partial weight because he found that Rodriguez was not as limited as opined by Dr. Smith. Earlier in his decision, the ALJ had noted that Dr. Smith

14

observed that Rodriguez was neat and clean in her appearance[5]; she was cooperative and related well; and her speech was clear and thinking was well organized. (Tr. 25). Dr. Smith noted that Rodriguez may be able to understand verbal instructions better than written (Tr. 280), but the ALJ was not required to adopt this suggestion into the RFC determination. He acknowledged this aspect of Dr. Smith's opinion and explained why he did not assign more weight to it. (Tr. 29). Rodriguez has not identified any additional limitations that the ALJ was required to include in his RFC determination based on Dr. Smith's opinion.

Rodriguez has also failed to cite medical evidence supporting a more restrictive RFC. Even if she *had* cited evidence supporting a more restrictive RFC, she has not shown that the ALJ's RFC determination lacked the support of substantial evidence in the record. Stated another way, Rodriguez has challenged the ALJ's manner of weighing the evidence, but she has not shown that his decision lacked support from the evidence or was outside his 'zone of choice.' Consequently, Rodriguez has not identified any legal error in the ALJ's application of 20 C.F.R. § 416.927 to Dr. Smith's opinion.

### 3. Dr. Bruce Goldsmith

Rodriguez also argues that the state agency psychological consultant's opinion "cannot save" the ALJ's analysis. As already explained, the ALJ's assessment of the medical opinions had no need of "saving." Regarding Dr. Goldsmith's opinion, the ALJ stated:

> This opinion is given partial weight, as it is somewhat consistent with the record as a whole. For example, it is consistent with the claimant's consultative exam, when she knew the names of current and recent presidents, but did not know the name of the governor or mayor (Exhibit 1F/6). It is consistent with the psychiatric exam, which showed the claimant's mood was anxious (Exhibit 9F/63). Furthermore, it is consistent with psychiatric examination, which showed the claimant's speech was rapid and/or pressured (Exhibit 19F/63). Accordingly, this opinion is given partial weight. (Tr. 27).

---

[5] The weight assigned to Dr. Smith's opinion was based on several factors – not simply that Rodriguez was "well-groomed." See ECF Doc. 11 at 18.

15

Dr. Goldsmith was not a treating physician and his opinion was not entitled to controlling weight. The ALJ was required to consider his opinion along with the other non-treating opinions in the record. He did so. He assigned partial weight to Dr. Goldsmith's opinion and explained the reasons for the weight assigned. Rodriguez has not identified any legal error in the ALJ's application of 20 C.F.R. § 416.927 to Dr. Goldsmith's opinion.

## VI.     Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Court affirm the Commissioner's final decision denying Rodriguez's application for SSI.

Dated: November 30, 2020

Thomas M. Parker
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).